UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-14035-CR-MAYNARD

UNITED STATES OF AMERICA

v.

FRANCISCO FRANCISCO-MATEO,

                 **Defendant.**
_____/

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds in opposition to the defendant's motion for downward variance, and moves this Honorable Court to deny the defendant's motion, and sentence the defendant to a period of 12 months imprisonment, followed by one year supervised release.

### BACKGROUND

On May 26, 2025, Florida Highway Patrol (FHP) Trooper John Petrofsky conducted a traffic stop on a work truck labeled "CHOO MJM LAWN" in Martin County, in the Southern District of Florida (PSI ¶ 6). Trooper Petrofsky identified himself to the three occupants and began conducting a commercial motor vehicle safety inspection (id.). Trooper Petrofsky asked for identification from the three occupants, at which time the driver provided a temporary Florida driver license, and the front passenger provided a Guatemalan ID card (id.). The passenger sitting on the passenger side of the rear seat, later identified as the defendant, did not provide identification (id.). All three occupants told Trooper Petrofsky that they are from Guatemala (id.). Trooper Petrofsky contacted ICE Deportation Officer Andersson for assistance (id.).

Deportation Officer Andersson arrived on scene and approached the passenger side of the truck, near Trooper Petrofsky (PSI ¶ 7). As Deportation Officer Andersson identified himself, the defendant removed his seat belt and quickly moved towards the rear driver side door (id.). Officer Andersson rushed around the front of the vehicle to stop the defendant (id.). At that time, ICE Deportation Officer Blumsack arrived and covered the driver side of the vehicle (id.). Deportation Officer Andersson returned to the passenger side of the vehicle (id.).

Trooper Petrofsky repeatedly ordered the defendant to open the door and to come out of the vehicle (PSI ¶ 8). At first, the defendant kept the rear passenger door locked, and made several movements throughout the cabin (id.). Then, the defendant unlocked the rear passenger door (id.). As Trooper Petrofsky opened the door, the defendant moved away and tried to climb to the front driver side of the vehicle (id.). Trooper Petrofsky entered the vehicle and physically removed the defendant (id.).

As the defendant was removed from the vehicle, the officers attempted to gain physical control of the defendant, but he continued to resist their lawful commands, and began swinging his elbows (PSI ¶ 9). The two deportation officers, the trooper, and the defendant, all fell to the ground (id.). The defendant continued to resist, despite several commands to "stop moving." (id.).

Trooper Petrofsky stood up, created distance, and drew his taser as the defendant and both deportation officers returned to their feet (PSI ¶ 10). Then, Trooper Petrofsky deployed his taser, causing the defendant to fall back onto the ground (id.). The defendant thwarted the officers' efforts to place him in handcuffs by trying to get back up onto his feet (id.). Trooper Petrofsky deployed his taser again (id.). The defendant continued to keep his hands tucked under his body (id.). As officers gained control of the defendant's wrists, he grabbed the officer's handcuffs and held onto the officer's hand (id.). The officers eventually placed the defendant in handcuffs after

2

additional taser deployments (id.).

As a result of the encounter, Deportation Officer Andersson suffered wounds on his right forearm and abrasions on both knees and shins (PSI ¶ 11).   Deportation Officer Blumsack suffered a scratch on his right forearm and abrasions on his left wrist and left hand (id.).

On June 23, 2025, the United States filed an Information charging the defendant with "resist, oppose, impede, intimidate, or interfere with a federal officer," in violation of Title 18, United States Code, Section 111(a)(1) (ECF No. 12).

On August 20, 2025, the defendant pled guilty to the indictment (ECF No. 26).

According to the Presentence Investigation Report (PSI), the defendant has a total offense level of 13, and a criminal history category of I, which yields an advisory sentencing guideline range of 12 months' imprisonment (PSI ¶¶ 28, 35, 59).

On September 25, 2025, the defendant filed his sentencing memorandum advocating for a four-month, time-served sentence, which is a variance from the sentencing guidelines (ECF No. 33).

The defendant's sentencing hearing is set for October 2, 2025 (ECF No. 27).

## ARGUMENT

I.    **The § 3553(a) factors support a sentence of 12 months' imprisonment.**

A sentence of 12 months imprisonment, followed by one year of supervised release, is sufficient, but not greater than necessary to ensure the objectives of 18 U.S.C. § 3553(a).

In *Kimbrough v. United States*, the Supreme Court upheld a variance based on policy considerations, and in consideration of the objectives of the 3553(a) factors.  *Kimbrough v. United States*, 552 U.S. 85, 89 (2007) and *see United States v. Flores-Perez*, 749 Fed.App'x 793, 798 (11th Cir. 2018).  *Kimbrough* granted permissive authority to district courts to grant a variance

based on policy considerations, but did not mandate such a variance in every instance. *Flores-Perez*, 749 Fed.App'x at 799 and *United States v. Trejo*, 624 Fed.App'x 709, 715 (11th Cir. 2015). Instead, a sentence within the sentencing guidelines is expected, but not presumed to be reasonable, so long as it considers the arguments of the parties, the 3553(a) factors, and offers support for its reasoning. *Id*. at 799 and *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).

When sentencing a defendant, the Court is required to "impose a sentence sufficient, but not greater than necessary" that complies with the purposes of the statute and takes into consideration the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public, to provide the defendant with adequate services, and which considers the kinds of sentences available, the sentencing ranges, pertinent policy, the need to avoid unwarranted sentencing disparities, and to provide restitution. 18 U.S.C. § 3553(a).

**A. Nature and circumstances of the offense & specific deterrence.**

Every day, members of law enforcement encounter citizens as part of their job, knowing that each encounter exposes them to harm, and possibly death, should a defendant make the wrong choice. On May 26, 2025, the defendant made the wrong choice. He escalated a routine traffic stop and detention into a serious, potentially life-threatening encounter. From the moment Trooper Petrofsky ordered the defendant out of the truck, the defendant resisted and opposed his lawful commands, moving to the opposite side of the truck. Once the officers managed to extract the defendant, he continued to resist, wrestling with Trooper Petrofsky, Officer Andersson, and Officer Blumsack as they tried to place him in handcuffs. Both Officers Andersson and Blumsack received injuries during the struggle. Officer Andersson suffered wounds on his right forearm

and abrasions on both knees and shins, while Officer Blumsack suffered a scratch on his right forearm and abrasions on his left wrist and left hand. Fortunately, none of the injuries were life-threatening, but neither Trooper Petrofsky, Officer Andersson, nor Officer Blumsack could predict the defendant's behavior that day. They did not know if he had a weapon, and they did not know if he intended to harm them, all because the defendant prioritized himself, over the safety of others.

Therefore, a sentence of 12 months' imprisonment, followed by one year of supervised release is sufficient, but not greater than necessary to account for the nature and circumstances of the defendant's conduct.

### B. History and characteristics of the defendant, and specific deterrence.

The defendant's criminal history displays a general disregard for the law, and a pattern of behavior consistent with a person who engages in dangerous behavior.

In 2009, at the age of 22, the defendant pled guilty to driving under the influence of alcohol. He received a 60-day suspended jail sentence, followed by 24 months of probation. Despite this generous sentence, the defendant violated his probation by failing to attend "required level on education classes." (PSI ¶ 30). In 2014, the defendant was arrested in connection with possession of marijuana (PSI ¶ 32). He received a pretrial diversionary sentence, but while on pretrial diversion, picked up a new offense of simple battery (id.). The Court gave the defendant a second chance, placing him on pretrial intervention (PTI), but once again, he violated his PTI. As a result, the defendant pled guilty to possession of paraphernalia, a lesser included offense, with eight days time-served. In 2018, the defendant committed a simple battery (described above), when he drunkenly tried to fight patrons in the parking lot of a country store (PSI ¶ 33). In one instance, the defendant approached a male, and offered to sell him crack cocaine (id.). When the male declined, the defendant grabbed him, reached in his pockets, and chased the victim after he tried

to get away (id.).   Ultimately, the defendant pled guilty to this simple battery in 2025, and received a time-served sentence (id.).   Finally, in 2019, the defendant was convicted of driving without a valid driver's license.

Based on this criminal history, the defendant received tremendous leniency during his contacts with the criminal justice system.  He received diversionary sentences for his first two non-traffic offenses, but in each, the defendant violated the terms of the diversion program, resulting in criminal convictions.  The defendant's criminal history also suggests that he has a problem with alcohol, having received convictions for driving under the influence, and engaging in violence while intoxicated.   Thus, rather than take advantage of the numerous opportunities he received, despite being in the United States unlawfully, the defendant disregarded the law, and the safety of those around him, in favor of his own personal self-interest.

Therefore, any sentence that the Court imposes must be sufficiently serious to reform the defendant's conduct.   A sentence of 12 months is necessary to make a meaningful impression on the defendant, to end the cycle of criminal behavior, and to reform his conduct.

### C. Provide for specific deterrence.

In light of the defendant's substantive offense conduct, and his criminal history, specific deterrence is the primary concern in this case.   In short, the defendant lacks judgment, choosing the path of least resistance, regardless of the law, or who gets hurt.   This lack of judgment led to the events of this case.   The defendant transformed a simple traffic stop into something dangerous. He knew that he was in the United States unlawfully, but rather than peacefully return to his native country, he elected to fight.   He chose the path most beneficial to him, and ignored the cost to the law enforcement officers involved.   Therefore, a sentence of 12 months' imprisonment is

necessary to balance out the defendant's own self-interest, and ensure in the future, that he considers the consequences of his actions.

## CONCLUSION

Based on the foregoing, the United States respectfully requests the Court to deny the defendant's motion for downward variance, and sentence the defendant to 12-months' imprisonment followed by one year of supervised release.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   **/s/Christopher H. Hudock**
Christopher H. Hudock
Assistant United States Attorney
Florida Bar# 92454
101 South U.S. Highway 1, Suite 3100
Fort Pierce, Florida 34950
Telephone: (772) 293-0951
Email: Christopher.hudock@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by either regular U.S. mail or inter-office delivery.

**/s/Christopher H. Hudock**
Christopher H. Hudock
Assistant United States Attorney